UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GREAT MINDS,<br><br>                    Plaintiff,<br><br>          v.<br><br>JOHN WILEY & SONS, INC.,<br><br>                    Defendant. | Civil Action No. 15-cv-04884-RJS<br><br>ECF Case<br><br>**GREAT MINDS' STATEMENT OF UNDISPUTED MATERIAL FACTS IN SUPPORT OF ITS MOTION FOR PARTIAL SUMMARY JUDGMENT** |

In accordance with Local Civil Rule 56.1, plaintiff/counter-defendant Great Minds ("Great Minds"), by and through its undersigned counsel, submits the following as its Statement of Undisputed Material Facts in support of its Motion for Partial Summary Judgment.

**Background**

1. Great Minds (formerly Common Core, Inc.) is a 501(c)(3) non-profit educational organization in Washington, DC that, among other things, creates educational materials for grades PK-12, including Great Minds' *Eureka Math* curriculum. (Defendant and Counterclaimant John Wiley & Sons, Inc.'s Counterclaims ("Countercl.") ¶¶ 6, 10, 12; Great Minds' Reply ("Reply") ¶¶ 6, 10, 12.)

2. Defendant/Counterclaimant John Wiley & Sons, Inc. ("Wiley") is a publishing company founded in 1807 and a New York corporation with its principal place of business in Hoboken, New Jersey. (Countercl. ¶ 4; Reply ¶ 4.)

3. Great Minds began working with Wiley in 2010, when Wiley offered Great Minds a contract to publish Great Minds' English Language Arts curriculum maps. (Wiley's Answer to Complaint ("Answer") ¶ 11.)

4.	Great Minds and Wiley executed written agreements dated April 17, 2012 and August 8, 2012 (the "2012 Agreements"), which, among other things, granted Wiley an exclusive license to publish certain math materials created by Great Minds that the parties have referred to as the math "Study Guides" for grades K-12. (Countercl. ¶ 10; Reply ¶ 10; Declaration of Rhett O. Millsaps II in Support of Partial Summary Judgment Motion ("Millsaps Decl.") ¶¶ 2-3, Exs. A-B.)

5.	On August 21, 2013, Great Minds and Wiley executed a written addendum to the 2012 Agreements (the "Addendum"). (Countercl. ¶ 12; Reply ¶ 12; Millsaps Decl. ¶ 4, Ex. C.)

**The Written Agreements At Issue**

6.	The Addendum grants Wiley certain publishing rights as follows: "Under the terms of Paragraph 12.C. of both [2012] Agreements, the Parties hereby agree that the Publisher shall publish so-called 'quick print' book versions of the New York Project (the 'Custom Editions')." (Millsaps Decl. Ex. C at 1.) The Addendum further states, "The rights granted by [Great Minds] to [Wiley] for the Custom Editions are explicitly limited to the exclusive license to publish the Custom Editions in print formats…" (*Id*.)

7.	Paragraph 12.C. of the April 17, 2012 agreement provides as follows:

> If [Great Minds] is awarded publishing contracts under the New York Project as described in Paragraph 11.A.v. [*sic*] above and the terms of such awarded publishing contracts (i) require publication of materials in book or other print format, (ii) give [Great Minds] the sole discretion to choose the publisher of such materials and (iii) do not otherwise restrict [Great Minds] so that the following is not reasonably practicable, [Great Minds] and [Wiley] agree to negotiate in good faith with respect to mutually agreeable terms and conditions for Publisher to act as publisher on the book or other print format publications resulting from such awarded publishing contracts. If [Great Minds] and [Wiley] are unable to agree upon terms within twenty-one (21) days following the date that [Great Minds] requests an offer from [Wiley] for such book or other print format publishing contracts, then [Great Minds] may offer such rights to third parties.

(Millsaps Decl. Ex. A ¶ 12.C.)

8. The term "New York Project," which is referenced in both the Addendum and in Paragraph 12.C. of the 2012 Agreements, is defined in paragraph 11.A.vi. of the April 17, 2012 agreement as follows: "[Great Minds] has submitted certain proposals for contracts with the New York State Education Department to create and develop curriculum modules and additional curriculum resources in mathematics for grades PreK-2 and 3-5 aligned with New York's Common Core Learning Standards (the 'New York Project')." (Millsaps Decl. Ex. A ¶ 11.A.vi.)

9. Paragraph 12.C. of the August 8, 2012 agreement provides as follows:

> If the terms of the New York Project, or the terms of any comparable contracts based on the materials in the Work awarded by other school districts in the future (i) require publication of materials in book or other print format, (ii) give [Great Minds] the sole discretion to choose the publisher of such materials and (iii) do not otherwise restrict [Great Minds] so that the following is not reasonably practicable, [Great Minds] and [Wiley] agree to negotiate in good faith with respect to mutually agreeable terms and conditions for [Wiley] to act as publisher of the book or other print format publications resulting from such contracts. If [Great Minds] and [Wiley] are unable to agree upon terms within twenty-one (21) days following the date that the [Great Minds] requests an offer from [Wiley] for such book or other print format publishing contracts, then [Great Minds] may offer such rights to third parties.

(Millsaps Decl. Ex. B ¶ 12.C.)

10. The Addendum requires that Great Minds "deliver the Custom Editions in the form of final electronic files" that "shall be four-color files in .pdf format and shall include the dedication page (if any) through the index (if any), including text and illustrative material, all design elements and graphics." (Millsaps Decl. Ex. C at 1.)

11. In contrast, the 2012 Agreements do not require that Great Minds do the publisher's work to finalize the manuscripts for printing, but rather (i) set out different requirements for manuscript delivery, (ii) provide that Wiley "shall arrange for copy-editing of the Works at [Wiley's] sole cost and expense, following any substantive editing of the Work and prior to preparing page proofs," and (iii) provide that Wiley "shall have the sole responsibility

and obligations for the cost of development…'Cost of development,' as used herein, includes, without limitation, the cost of copyediting, artwork, photography and related art services, from concept stage to final product…" (Millsaps Decl. Exs. A-B ¶¶ 2.A.-2.E., 4.A.-4.B.)

12. The Addendum provides that Wiley "may not charge any deductions accounted to [Great Minds] under the Agreements or any other agreements between the parties against the royalties for the Custom Editions." (Millsaps Decl. Ex. C at 2.)

13. In contrast, the 2012 Agreements provide that Wiley will pay Great Minds certain percentages of Wiley's "net dollar receipts" – which allow for various deductions from gross receipts by Wiley – for sales of the materials under those agreements. (Millsaps Decl. Exs. A-B ¶¶ 5.C.-5.D.)

14. The 2012 Agreements required Wiley to pay Great Minds grants totaling $40,000 in addition to advances totaling $340,000. (Millsaps Decl. Exs. A-B ¶¶ 5.A.-5.B.)

15. In contrast, the Addendum provided that Wiley would pay Great Minds a grant of only $5,000 "for use in preparing and distributing the final electronic files" for the New York Project. (Millsaps Decl. Ex. C at 1.)

Dated: February 16, 2016
New York, New York                           Respectfully submitted:

LAW OFFICE OF RHETT O. MILLSAPS II        SIMPSON THACHER & BARTLETT LLP


By:     s/ Rhett O. Millsaps II                By:     s/ Christopher Jon Sprigman

Rhett O. Millsaps II                           Christopher Jon Sprigman
745 Fifth Avenue, Suite 500                    425 Lexington Avenue
New York, NY  10151                            New York, NY  10017
Phone:  (646) 535-1137                         Phone:  (212) 455-7844
Fax:  (646) 355-2816                           Fax:  (212) 455-2502
Email:  rhett@rhettmillsaps.com                Email:  christopher.sprigman@sbtlaw.com

*Attorneys for Plaintiff/Counter-defendant Great Minds*